IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Hyer Standards, LLC<br><br>                Plaintiff,<br><br>v.<br><br>Super G Capital, LLC; Multipoint, Inc.;<br>Ashley Isenberg; and WorldPay,<br><br>                Defendants. | Case No.: 1:18-cv-06669<br><br>Judge Charles Kocoras<br><br>Magistrate Judge Jeffrey Cummings |

DEFENDANTS' PARTIAL MOTION TO DISMISS
COUNTS II THROUGH XII and XIV OF PLAINTIFF'S COMPLAINT

    Defendants, Super G Capital, LLC, ("Super G"), Multipoint, Inc. ("Multipoint") and Ashely Isenberg ("Isenberg") (collectively the "Defendants"), by their attorneys' Jordan Finfer and Elizabeth Archerd of the law firm Patzik, Frank & Samotny Ltd., hereby move the Court pursuant to F.R.C.P. 12(b)(6) to Dismiss Plaintiff, Hyer Standards LLC ("Hyer Standards" or "Plaintiff") Counts II through XII and XIV and in support thereof states as follows:

    **I.**    **Introduction.**

    On December 17, 2018, Plaintiff filed its amended fourteen count complaint (the "Complaint"). This dispute arises from an agreement reached between Plaintiff and Multipoint on July 5, 2017, whereby Multipoint agreed to purchase from Plaintiff credit card processing merchant accounts and the residual payments earned from credit card processing machines with those merchants (the "Agreement"). Plaintiff alleges that in January of 2018, Multipoint breached the Agreement when it stopped making payments. Although Multipoint refutes Plaintiff's breach of contract claim, the claim is not subject to this Motion. However, every other claim against the Defendants should be dismissed, because each is an attempt by Plaintiff to dress up its breach of contract claim as something else, as a means to seek personal liability and punitive damages.

1

Plaintiff has asserted claims against Multipoint, Super G – a lender who uses the residual payments as collateral for its loans and Isenberg – a former employee of Multipoint who took part in the negotiation of the terms of the Agreement with Plaintiff.[1] Plaintiff's claims are: 1)Breach of contract against Multipoint and Worldpay; 2) Wis. Stat. § 134.01 against Multipoint and Super G; 3) Civil Conspiracy against Multipoint and Super G; 4) Punitive Damages against Multipoint and Super G; 5) Misrepresentation against Multipoint; 6) Negligent Misrepresentation against Multipoint; 7) Intentional Misrepresentation against Multipoint; 8) Strict Liability Misrepresentation against Multipoint; 9) Rescission of Contract against Multipoint; 10) Civil Theft against Super G; 11) Fraud against Multipoint and Super G; 12) Piercing The Corporate Veil against Isenberg; 13) Replevin against Worldpay; and 14) Consumer Fraud against Multipoint.

Plaintiff's Count II should be dismissed because Illinois law governs this dispute, not Wisconsin law. Count III should be dismissed because Plaintiff does not allege a tort or an agreement between the alleged co-conspirators. Count IV should be dismissed because it is a remedy, not a cause of action. Plaintiff's claims sounding in Fraud, Counts V through VIII, XI and XIV should be dismissed because, among other flaws, none of the claims assert a breach greater than a contractual obligation. Count IX should because rescission is a remedy not a cause of action. Count X should be dismissed because Plaintiff does not allege any of the elements of conversion. Count XII should be dismissed because Plaintiff does not allege any of the elements to support a veil piercing claim.

**II.     Statement of Facts.**

Multipoint is a credit card processing company. *Am. Compl.*, ¶2. In June of 2017, Plaintiff approached Multipoint about using it as a credit card processor for Plaintiff's merchants because

---

[1] World Play purchased credit card processing accounts from Multipoint and is a Defendant in this action arising from that purchase but is represented by separate counsel.

Plaintiff's existing processor could not process credit card chip. *Id.*, ¶6. Plaintiff had developed a monthly stream of income (a/k/a residuals) from the fees earned by its prior credit card processing company. *Id.*, Ex. A, *see* WHEREAS clause. On July 5, 2017, Multipoint and Plaintiff entered into the Agreement whereby Plaintiff agreed to sell all of its rights title and interest in its residuals (attached to the Agreement as Exhibit B) and all its related assets, including equipment, contracts and phone numbers to Multipoint. *Id.*, ¶1.1. In exchange for Plaintiff's sale of its residuals and related assets, Multipoint agreed to the following:

1) That Multipoint would make the following payments: a) $110,000 paid over 12 monthly equal installments to Hyer Standards; b) Paying off a loan Hyer Standards had with Super G in the amount of $15,396.88; c) Reimbursement of registration fees Hyer Standards paid credit card companies in the amount of $10,000;

2) That Multipoint would hire two of Hyer Standards sales representatives, Duan Vandre and Donald Lewis and pay them 50% of the residual payments Multipoint receives from the then current residual payments and any future residual payments that they signed up;

3) That Multipoint would pay Jayme Hyer (owner of Plaintiff)10% of the residual payments earned from the then current residual payments and 50% of any future residual payments that they signed up; and

4) That Multipoint would pay Jayme Hyer 10% referral fee for any accounts that Jayme Hyer referred to Multipoint and on any accounts Plaintiff's then employees, Duan Vandre and Donald Lewis signed up for Multipoint.

It is Multipoint's alleged failure to perform its obligations above that forms the basis of Plaintiff's Complaint.

### III. Argument

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations of a complaint. *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 884 (N.D. Ill. 2008). In order to withstand a Rule 12(b)(6) motion, the complaint must allege "sufficient factual material to suggest plausibly that the plaintiff is entitled to relief." *Id*. When deciding on a motion to dismiss, the court must accept the well-pleaded allegations of a complaint

as true; however, the court does not need to accept legal conclusions alleged by Plaintiff. *Davis v. Frapolly*, 747 F. Supp. 451, 452 (N.D. Ill. 1989).

### A. Plaintiff's Claim under Wis. Stat. § 134.01 should be dismissed with prejudice because Illinois law applies to this suit.

The governing law provided for in the Agreement is Illinois. See *Am. Compl.*, Ex. A, ¶11.8. "Illinois law holds that the law applicable to a contract is the law intended by the parties. When the parties express that intent (such as through a governing law provision), that express intent is generally recognized." *Smurfit Newsprint Corp. v. Se. Paper Mgf.*, 368 F.3d 944, 949 (7th Circ. 2004). Furthermore, "a federal court sitting in diversity must apply the substantive law of the state in which it sits…" *Jancie Doty Unlimited, Inc. v. Stoecker*, 697 F. Supp. 1016, 1019 (N.D. Ill. 1988). In Illinois, "tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 306 (7th Cir. 2018).

Plaintiff's Count II is premised upon a Wisconsin statute that provides for criminal penalties for harming the reputation of a party. Because the alleged harm arises from the Agreement and this matter is proceeding in Illinois, Wisconsin law should not be applied. Even assuming Wisconsin law was appropriate, it is unclear whether Wis. Stat. §134.01 provides for a private right of action, an analysis which is unnecessary in light of the inapplicability of the statute to this matter. Accordingly, Count II should be dismissed with prejudice.

### B. Plaintiff does not adequately allege civil conspiracy.

In order to state a claim for civil conspiracy a party must allege, "1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs*

*Grp. Inc.*, 477 F.3d 502, 509 (7thCirc. 2007). The agreement between the parties "is a necessary and important element of the cause of action." *Id.* Further, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* This is a heightened pleading standard, which requires more than the plain statement of the claim. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Accordingly, the Plaintiff must make some allegations regarding the nature of the purported agreement, such as what the agreement was, who made it and when it was made. *Borsellino*, *supra*.

Here, Plaintiff makes no allegation as to what agreement existed between Multipoint and Super G, when it was made or who made the agreement. Furthermore, Plaintiff does not allege what tort was committed as a result of the conspiracy. Plaintiff only alleges that its reputation was harmed but is silent as to who harmed it, when it was harmed and why it was harmed. Accordingly, this Count III should be dismissed with prejudice.

### C. Plaintiff's punitive damages claim should be dismissed because it is not a cause of action.

As the Illinois Supreme Court has explained, "a prayer for punitive damages is not, itself, a cause of action, but instead a type of remedy." *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill.2d 495 (Ill. 2011). Because there is no cause of action for punitive damages, rather only a remedy, Plaintiff's Count IV should be dismissed with prejudice.

### D. Plaintiff has asserted six claims for misrepresentation and fraud against Multipoint (and one against Super G) each should be dismissed with prejudice.

Plaintiff has asserted three claims of fraudulent misrepresentation against Multipoint, one claim for negligent misrepresentation, one claim for common law fraud and one claim for consumer fraud. All these claims, which will be addressed in this section are fatally flawed. As an initial matter, Plaintiff rather confusingly attempts to assert three different types of

misrepresentation claims, distinct from one another and the negligent misrepresentation claim. However, there are only two types of misrepresentation claims, fraudulent and negligent; thus it is unclear what Plaintiff intended. Defendants treat each of the claims as if they intended to be claims for fraudulent misrepresentation.

> The elements of a claim of fraudulent misrepresentation in Illinois are, (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

Fraudulent misrepresentation claims are subject to the heightened pleading standard for fraud, pursuant to F.R.C.P. 9(b), i.e. the who what, when where of the claim. *Hefferman, supra,* 601. Further, "a promise to perform a future act, even though made without a present intention to perform, is insufficient to constitute fraud." *Naturalock Sols., LLC v. Baxter Healthcare Corp.*, 2016 WL 5792377, at 5 (N.D. Ill. 2016). "This rule guards against the risk of turning every breach of contract suit into a fraud suit and thereby thwarting the rule that denies the award of punitive damages for breach of contract." *Id.*, *see Desnick v. Am. Broad. Cos., Inc.,* 44 F.3d 1345, 1354 (7th Circ. 1995).

    All of Plaintiff's fraud based claims fail for some of the same reasons. First, where a party fails to identify a fraudulent act distinct from the alleged breach of contract, the claim must fail. *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392 (7th Circ. 2011). Here, the only allegation regarding an alleged fraud of misrepresentation is that Multipoint said it would make payments **as required in the Agreement**. *See generally Am. Compl.*, ¶¶37, 44, 50, 56 (emphasis added). That is clearly a contractual obligation, indistinct from Plaintiff's breach of contract claim. Second, none of the fraud claims meets the heightened pleading standard of F.R.C.P. 9(b). Nowhere in the

6

complaint does Plaintiff allege who from Multipoint made the alleged false statements, when they were made, or to whom they were made.

Third, the only allegation regarding a false statement is that Multipoint represented to Plaintiff that it was financially stable and would make payments as required in the Agreement. *See generally Am. Compl.*, ¶¶37, 44, 50, 56.  However, Plaintiff alleges, perhaps inadvertently that these statements by Multipoint are true. Plaintiff alleges the Agreement was signed on July 5, 2017; plaintiff alleges that Multipoint had monthly payment obligations; and then plaintiff alleges that in January of 2018, it was not paid by Multipoint.  *Id.*, ¶¶8-9.  Taking the allegations as true, Multipoint at a minimum, paid Plaintiff for six months under the Agreement (July through December), had the ability to pay and in fact did pay as required under the Agreement, thus disproving Plaintiff's allegation that Multipoint misrepresented its ability to make its payment obligations under the Agreement. Lastly, assuming Plaintiff could overcome the aforementioned shortcomings, Multipoint's alleged misrepresentation regarding its ability to make payments relates to a future promise and cannot form a basis for a fraud claim unless Plaintiff alleges an exception to promissory fraud, which it has not done here.

Plaintiff's Counts VII (intentional misrepresentation) and VIII (strict liability misrepresentation) should be dismissed with prejudice for the reasons stated above.  Counts V, VI, XI, XIV, should be dismissed for additional reasons, stated below.

> **i. Plaintiff's Count V for Misrepresentation should be dismissed with prejudice for failing to state a cause of action.**

In Count V Plaintiff, in addition to the above, does not allege which of Multipoint's alleged statements are false; that they were known to be false at the time they were made, and that Plaintiff relied upon such statements when entering into the Agreement. *See generally Am. Compl.*, ¶¶36-42. Accordingly, this claim should be dismissed with prejudice.

> ii. **Plaintiff's Negligent Misrepresentation Claim, Count VI should be dismissed with prejudice because it is barred by the economic loss doctrine.**

In Count VI, in addition to the above, Plaintiff's claim is barred by the economic loss doctrine. "The economic loss doctrine forecloses [Plaintiff's] recovery on this negligence claim. Known as the *Moorman* doctrine in Illinois, this doctrine bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). There are a number of exceptions to the *Moorman* doctrine, each rooted in the general rule that "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.* "To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Id.*

A claim for negligent misrepresentation is exempt from the economic loss doctrine "where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their [internal citation omitted] business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 337 (Ill. 2006). Examples of people in the business of supplying information are real estate brokers, appraisers, surveyors or home inspectors. *Id* 332-333. Multipoint is not in the business of supplying information for the guidance of others; multipoint is a credit card processor. Accordingly, Count VI should be dismissed with prejudice. In addition, Plaintiff has not alleged that Multipoint owed it a duty to provide it with accurate information, which is a necessary element of negligent misrepresentation. *See Board of Educ. Of City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428 (Ill. 1989).

> iii. **Plaintiff's Fraud Claim, Count XI against Multipoint and Super G has the same shortcomings as Plaintiff's misrepresentation claims against Multipoint. Plaintiff also fails to allege any elements of fraud against Super G.**

The elements of fraud are the same as fraudulent misrepresentation. *See Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797, 805 (7th Circ. 2018); *see also Wigod, supra*. The fraud claim against Multipoint should be dismissed with prejudice for all of the previously stated reasons.

The fraud claim against Super G should be dismissed because Plaintiff does not allege that Super G made any statements to it, false or otherwise; Plaintiff does not allege that Super G had knowledge of any false statements; that Super G made any statements with the intent to induce Plaintiff to act; that Plaintiff relied upon those statements; and there are no allegations of damages proximately caused therefrom. Accordingly, Count XI should be dismissed with prejudice.

> iv. **Plaintiff has not alleged any of the elements of consumer fraud, nor is it a consumer, and its Count XIV should be dismissed with prejudice.**

To assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA") consumer fraud pursuant to 815 ILCS 505/1 et seq., a party must allege the following: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Circ. 2015). The protections of the ICFA are typically limited to consumers. *Mighty v. Safeguard Properties Management, LLC*, 2018 WL 5619451 at 9 (N.D. IL 2018). A consumer is defined under the ICFA as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

9

A non-consumer may assert a claim under the "consumer nexus test". *Mighty, supra*. The consumer nexus test requires the plaintiff to allege, "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interest of consumers. *Id*. Further, like a common law fraud claim, a claim under the ICFA must be based on something more than a simple breach of contract. *Greenberger, supra*.

Plaintiff's ICFA claim suffers from numerous flaws. Plaintiff is not a consumer. Plaintiff is a business that sold certain of its assets to another business. Plaintiff has not made any allegations that would demonstrate there is a consumer nexus between the alleged conduct of Multipoint and consumers. Plaintiff also does not allege any conduct by Multipoint that is more than a breach of contract. Plaintiff's beef is that multipoint has not made certain payments pursuant to the Agreement. Accordingly, Plaintiff's Count XIV should be dismissed with prejudice.

**E. Plaintiff has not plead the elements to support a claim for rescission.**

Like punitive damages, "[r]escission is a remedy, premised on the existence of an otherwise valid and enforceable contract." *Pardo v. Mecum Auction Inc.*, 77 F.Supp.3d 703, 711. Rescission is an appropriate remedy where the plaintiff alleges, "(1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Id. quoting Horwitz v. Sonneschein Nath & Rosenthal LLP*, 399 Ill.App.3d 965, 973 (1st Dist. 2010). Plaintiff does not seek rescission as a remedy, nor has Plaintiff alleged substantial nonperformance or that the contract can be restored to the status quo. Accordingly, Plaintiff's Count IX should be dismissed with prejudice.

**F. Plaintiff fails to allege a claim for conversion (or civil theft) against Super G.**

"The four elements of conversion are: (1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 14.

Plaintiff fails to allege that Super G's possession of residual income is unauthorized; nor that Plaintiff has a right to the property, which right is immediate and absolute. Furthermore, "an asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel"…in other words, "a specific fund or specific money in coin or bills." *Horbach v. Kaczmarek*, 288 F. 3d 969, 978 (7th Circ. 2002). Although Plaintiff generally refers to the property as its "residual income", it is not clear what specific residual income it is referring to. This shortcoming is underscored by the fact that the pursuant to the Agreement, Plaintiff sold its right, title and interest in the residual income to Multipoint. *Am. Complt.*, Ex. A. Thus, it is unclear how Plaintiff can ever allege an absolute, unconditional right to the residual payments. Accordingly, Plaintiff's Count X should be dismissed with prejudice.

**G. Plaintiff's Count XII, veil piercing against Isenberg is meritless and should be dismissed.**

"Illinois law permits veil piercing when two separate prongs are met: (1) "there must be such unity of interest and ownership that separate personalities [internal citation omitted] of the corporation and the individual" no longer exist; and (2) "circumstances must be such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice."" *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012).

11

> In determining whether there is sufficient unity of interest and ownership to warrant piercing of the corporate veil, Illinois courts have considered a number of factors, including: (a) inadequate capitalization; (b) failure to issue stock; (c) failure to observe corporate formalities; (d) nonpayment of dividends; (e) insolvency of the debtor corporation; (f) nonfunctioning of other officers or directors; (g) absence of corporate records; (h) commingling of funds; (i) diversion of assets from the corporation by or to a shareholder; (j) failure to maintain arm's length relationships among related entities; and (k) the corporation being a mere facade for the operation of the dominant shareholders.

*In re Tolomeo*, 537 B.R. 869, 876 (Bankr. N.D. Ill. 2015).

Here, Plaintiff makes no allegations regarding whether there is sufficient unity of interest and ownership to warrant piercing the corporate veil. Plaintiff also makes no allegations that the circumstances are such that a fraud or injustice is being promoted. Instead, Plaintiff alleges, upon information and belief, that Isenberg controlled the policies and business practices of Multipoint. *Am. Compt.*, ¶78. Even if that allegation were true, which it is not, the mere fact that Isenberg directs the business practices of Multipoint has no relation to a veil piercing claim. Plaintiff's Count XII is woefully deficient and should be dismissed with prejudice.

## IV. Conclusion

Plaintiff has attempted to make this dispute something more than it actually is. This is not a fraud case. This is a breach of contract matter; a dispute over alleged non-payment of money owed. Plaintiff should not be permitted to make the proverbial mountain out of a molehill. Accordingly, the reasons stated herein, Plaintiff's Counts II through XII and XIV should be dismissed with prejudice.

For the foregoing reasons, Super G Capital, LLC, Multipoint, Inc. and Ashely Isenberg respectfully request that the Court dismiss Plaintiff's Counts II through XII and XIV with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and for any further relief the Court deems reasonable and just.

Dated: September 16, 2019          Respectfully submitted,
Multipoint, Inc., Super G Capital, LLC and Ashley Isenberg


By:\_\_\_\_/s/ Jordan Finfer_____,
One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
Elizabeth Archerd (earcherd@pfs-law.com)
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300
Firm I.D. No.: 35160