IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Hyer Standards, LLC<br><br>    Plaintiff,<br><br>v.<br><br>Super G Capital, LLC; Multipoint, Inc.; Ashley Isenberg; and WorldPay,<br><br>    Defendants. | Case No.: 1:18-cv-06669<br><br>Judge Charles Kocoras<br><br>Magistrate Judge Jeffrey Cummings |

<u>DEFENDANT, MULTIPOINT, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S AMENDED COMPLAINT</u>

Defendant, Multipoint, Inc. ("Multipoint") by its attorneys, Jordan Finfer and Elizabeth Archerd of the law firm Patzik, Frank & Samotny Ltd., for its Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Counterclaim, state as follows:

**GENERAL ALLEGATIONS**

1. Hyer Standards, LLC (hereinafter "Hyer"), is a domestic limited liability company authorized to do business in the State of Wisconsin and, in part, engages in payment processing services, and is located at 701 US Highway 45, Pelican Lake, Wisconsin 54463.

**Answer:** Multipoint lacks sufficient information to form a belief as to the truth of the allegations of paragraph 1 and, therefore, neither admits nor denies same.

2. Defendant, Super G Capital, LLC (hereinafter "Super G"), is a Delaware company that, in part, provides business financing to businesses. Super G's primary place of business is located at 1655 North Fort Meyer Drive #700, Arlington, Virginia 22209. Super G's registered agent for service of process is Darrin Ginsburg, 23 Corporate Plaza #100, Newport Beach, California 92660.

**Answer:** Multipoint lacks sufficient information to form a belief as to the truth

1

of the allegations of paragraph 2 and, therefore, neither admits nor denies same.

3. Defendant, Multipoint, Inc. (hereinafter "Multipoint") is an Illinois corporation that, in part, provides merchant service needs. Multipoint's primary place of business is located at 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642. Multipoint's registered agent for service of process is Ashley Isenberg, 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642.

**Answer:** Multipoint admits that it is an Illinois corporation that, in part, provides merchant service needs. Multipoint denies the remaining allegations of paragraph 3.

4. Upon information and belief, Defendant, Ashley Isenberg (hereinafter "Isenberg"), is the Owner, President, and COO of Multipoint, with her current whereabouts unknown. She currently conducts business at 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642.

**Answer:** Multipoint denies the allegations of paragraph 4.

5. Upon information and belief, Defendant, WorldPay is a business that provides secure payment services for small and large businesses, including payments online, card machines and telephone payments and has a business address located at 600 Morgan Falls Road, Atlanta, GA 30350.

**Answer:** Multipoint admits the allegations of the first sentence of paragraph 5. Multipoint lacks sufficient information to form a belief as to the truth as to the remaining allegations of paragraph 5 and, therefore, neither admits nor denies same.

6. On or around June 2017, Hyer approached Multipoint and Isenberg as it needed a new credit card processor as its existing processors could not process the credit card chips.

**Answer:** Multipoint admits the allegations of paragraph 6.

7. Multipoint and Isenberg claimed that it was an ISO processor, but that statement

was incorrect as it was not an ISO processor.

**Answer:** Multipoint denies the allegations of paragraph 7.

8. On July 5, 2017, Hyer and Multipoint entered into a portfolio purchase agreement (hereinafter "Agreement") in which Hyer agreed to sell and Multipoint agreed to purchase the portfolio residual, in part, on the following terms:

a. Multipoint agreed to make installment payments of $110,000.00 in equal installments over 12 months with the first payment due on August 20, 2017;

b. Multipoint agreed to make a final payment of $15,396.98 to Super G by July 20, 2017;

c. Multipoint agreed to reimburse Hyer $10,000.00 for registration fees;

d. Multipoint agreed to hire Hyer's two sales representatives, Duane Vandre and Donald Lewis;

e. Multipoint agreed that Duane Vandre and Donald Lewis would receive 50% of the residuals Multipoint received and for future accounts;

f. Multipoint agreed to pay Hyer 10% of the residuals earned from the portfolio residual and 50% of the residuals earned from future accounts Hyer signs up for payment processing through the purchaser; and

g. Hyer, Duane Vandre, and Donald Lewis agreed to sell payment processing services exclusively for Multipoint as indicated in the contract attached to this Complaint as Exhibit A.

**Answer:** Multipoint admits that it entered into the Agreement attached hereto as Exhibit A. The remaining allegations of paragraph 8 assert a legal conclusion and, therefore, Multipoint neither admits nor denies same. To the extent paragraph 8 asserts an allegation of fact, Multipoint denies same.

9. Multipoint never paid Hyer as required in the Agreement in January 2018.

**Answer:** Multipoint denies the allegations of paragraph 9.

10. Unknown to Hyer, prior to Multipoint ever paying Hyer for the accounts, Multipoint used the residual income from Hyer's portfolio to secure a loan with Super G.

**Answer:** Multipoint denies the allegations of paragraph 10.

11. Once Multipoint secured a loan from Super G, it failed to pay Hyer.

**Answer:** Multipoint denies the allegations of paragraph 11.

12. Despite Hyer's loans with Super G being paid in full, Hyer's residual income was redirected to Super G.

**Answer:** Multipoint denies the allegations of paragraph 12.

13. Hyer notified Super G that Multipoint had breached its Agreement with Hyer and demanded that Super G redirect the residual income from Hyer's portfolio to it. Super G continued to redirect Hyer's residuals to itself despite Super G knowing that Multipoint had breached its contract with Hyer.

**Answer:** Multipoint denies the allegations of paragraph 13.

14. Multipoint misrepresented its business in the process of negotiating the Agreement for its own financial gain.

**Answer:** Multipoint denies the allegations of paragraph 14.

15. Since the Agreement, Multipoint has not been providing Hyer's merchants with the support and assistance they require, Hyer has experienced:

    a. Employee attrition;

    b. Customer attrition; and

    c. Damage to its reputation.

**Answer:** Multipoint denies the allegations of paragraph 15.

16. As a result of Multipoint and Super G's behavior, Hyer has suffered financially, including defaulting on financial obligations.

**Answer:** Multipoint denies the allegations of paragraph 16.

17. Since litigation has commenced, WorldPay entered into a transaction with Multipoint and perhaps its owners for the purpose of purchasing approximately 50 credit card processing ISO accounts. Many of these accounts were purchased by Multipoint from Hyer. Hyer has not been paid per the contractual terms of its portfolio purchase agreement with Multipoint.

**Answer:** Multipoint denies the allegations of paragraph 17.

18. Pursuant to Section 11.9 of the contractual agreement that Multipoint had with Hyer, Multipoint was bound by the following:

> 11.9 <u>Assignment</u>. Neither this Agreement nor any interest herein shall be assignable (voluntarily, involuntarily, by judicial process or otherwise) by any party to any person or entity without the prior written consent of the other party. Any attempt to assign this Agreement without such consent shall be void and, at the option of the party whose consent is required, shall be an incurable breach of this Agreement resulting in the termination of this Agreement.

**Answer:** Multipoint denies the allegations of paragraph 18.

19. This contractual language was brought to the attention of WorldPay on December 7, 2018, but WorldPay has not responded. Hyer never consented to the sales or transfers to WorldPay.

**Answer:** Multipoint lacks sufficient information to form a belief as to the truth of the allegations of paragraph 19 and, therefore, neither admits nor denies same.

20. Jurisdiction is based upon diversity of citizenship to 28 USC § 1332 since the controversy is between citizens of different states and the amount in controversy exceeds $75,000.00.

**Answer:** Multipoint admits the allegations of paragraph 20.

21. Venue is proper pursuant to 28 USC § 1391(d) as the defendants have significant contacts within this judicial district.

**Answer:** Multipoint admits the allegations of paragraph 21.

### I. BREACH OF CONTRACT (AGAINST MULTIPOINT ONLY)

22. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

**Answer:** Multipoint re-states its answers to paragraphs 1-21 above as though fully restated herein.

23. Multipoint breached its contract with Hyer by failing to make payments as required in the Agreement.

**Answer:** Multipoint denies the allegations of paragraph 23.

24. Since litigation has commenced, WorldPay entered into a transaction with Multipoint and perhaps its owners for the purpose of purchasing approximately 50 credit card processing ISO accounts. Many of these accounts were purchased by Multipoint from Hyer. Hyer has not been paid per the contractual terms of its portfolio purchase agreement with Multipoint.

**Answer:** Multipoint denies the allegations of paragraph 24.

25. Pursuant to Section 11.9 of the contractual agreement that Multipoint had with Hyer, Multipoint was bound by the following

> 11.9 Assignment. Neither this Agreement nor any interest herein shall be assignable (voluntarily, involuntarily, by judicial process or otherwise) by any party to any person or entity without the prior written consent of the other party. Any attempt to assign this Agreement without such consent shall be void and, at the option of the party whose consent is required, shall be an incurable breach of this Agreement resulting in the termination of this Agreement.

Hyer never consented to the sales or transfers to WorldPay.

**Answer:** Multipoint denies the allegations of paragraph 25.

26. Hyer has suffered monetary and reasonably foreseeable damages as a result of Multipoint's breach of its contract with Hyer to which Hyer requests judgment against Multipoint for the amounts not paid as well as consequential damages suffered as a result of Multipoint's breach.

**Answer:** Multipoint denies the allegations of paragraph 26.

WHEREFORE, Defendant, Multipoint, Inc. respectfully requests that this Court enter judgment in its favor and against the Plaintiff, Hyer Standards LLC and for any further relief the Court deems reasonable and just.

**Counts II through XII and XIV are subject to a motion to dismiss.**

**Count XIII is directed solely against Defendant, Worldpay.**

**First Affirmative Defense**

To the extent that Plaintiff has failed to stay any claim upon which relief may be granted, its claims must be dismissed.

**Second Affirmative Defense**

Some or all of Plaintiff's claims are barred by the equitable doctrine of unclean hands, estoppel, wavier, and/or laches.

**Third Affirmative Defense**

Plaintiff failed to perform its obligations under its agreement with Multipoint.

**Fourth Affirmative Defense**

Lack of consideration.

**Fifth Affirmative Defense**

Plaintiff asserts a set-off arising from Plaintiff's breaches.

<u>COUNTERCLAIM</u>

Defendant/Counter-Plaintiff, Multipoint, Inc., ("Multipoint") by its attorneys, Jordan Finfer and Elizabeth Archerd of the law firm of Patzik, Frank & Samotny Ltd., for its counterclaim against Plaintiff, Counter-Defendant, Hyer Standards LLC, ("Hyer ") states as follows:

**Breach of Contract**

1. Hyer is a Wisconsin limited liability company with its principal place of business in Pelican Lake, Wisconsin. At all relevant times hereto, Hyer was in the business of credit card processing.

2. Upon information and belief, Jayme Hyer ("Jayme") is the sole Manager and interest holder of Hyer.

3. Multipoint is an Illinois corporation with it is principal place of business located in Chicago, Illinois. Multipoint is in the business of credit card processing.

4. On July 5, 2017, Multipoint and Hyer entered into an agreement whereby Hyer agreed to sell of its rights title and interest in its 223 merchant accounts and the residual fees paid therefrom and all of Hyer's related assets, including equipment, contracts and phone numbers to Multipoint (the "Agreement"). A copy of the Agreement is attached hereto as <u>Exhibit A</u>.

5. As a condition of the Agreement, Multipoint agreed to place First Data LLC ("First Data") credit card processing units with the merchant accounts Hyer was selling to Multipoint.

6. In exchange for Hyer's sale of its residuals and related assets, Multipoint agreed to the following:

   a) That Multipoint would make the following payments: a) $110,000 paid over 12 monthly equal installments to Hyer Standards; b) Paying off a loan Hyer had with Super G Capital LLC ("Super G") in the amount of $15,396.88; c) Reimbursement of registration fees Hyer paid credit card companies in the amount of $10,000;

   b) That Multipoint would hire two of Hyer's sales representatives, Duan Vandre and Donald Lewis and pay them 50% of the residual payments Multipoint receives from the then current residual payments and any future residual payments that they signed up;

    c) That Multipoint would pay Jayme 10% of the residual payments earned from the then current residual payments and 50% of any future residual payments that they signed up; and

    d) That Multipoint would pay Jayme 10% referral fee for any accounts that Jayme Hyer referred to Multipoint and on any accounts Plaintiff's then employees, Duan Vandre and Donald Lewis signed up for Multipoint.

7. Section 4.8 of the Agreement provides "Seller owns one hundred percent of the Assets, and no options or other agreements or arrangements to obtain any ownership interest in the Portfolio Residual and the Assets by any other person or entity exist."

8. Section 6.1 of the Agreement provides, "[n]o party shall take any course of action inconsistent with satisfaction of the requirements or conditions applicable to it set forth in this Agreement."

9. Section 6.2 of the Agreement provides, "[f]rom and after the date of this Agreement, each party shall perform all reasonable acts, execute all documents and do all things reasonably requested by the other parties in order to perfect the transfer of title to [Multipoint] of the assets sold by [Hyer] consistent with the provision of [the] Agreement, or as may be reasonably necessary or appropriate to otherwise consummate and carry into effect the transactions contemplated by [the] Agreement."

10. Section 8 of the Agreement, provides in relevant part that Hyer and its employees, affiliates, subsidiaries shall not:

> (i) …interfere with, disrupt, or attempt to interfere with or disrupt, any past, present, or prospective business relationship of Purchaser, contractual or otherwise, related to or arising from the Protected Merchants including, without limitation, the ability of Purchaser to own, operate or obtain a financial benefit from the Assets and to receive the revenue from the Protected Merchants; or (ii) solicit any merchant or otherwise cause any Protected Merchant to terminate or cancel its existing credit card or check processing. This section shall apply for a period of three (3) years following the date that Hyer, Duane Vandre, and Don Lewis are no longer affiliated with the Purchaser. If Seller, its owner, or employees violate the provisions of this section, Seller agrees that this will result in minimum damages to Purchaser in the amount of the greater of (x) fifty (50) times the average monthly profits derived

from the Protected Merchant or (y) five thousand dollars ($5,000.00) for each instance where Seller attempts to move any merchant to another payment processor and Seller shall pay that amount to Purchaser on each such occurrence…

11. In October of 2017, First Data began applying a minimum charge to Multipoint for the use of its processing units. This practice continued in the subsequent months.

12. Hyer and Jayme had specifically represented to Multipoint that there were no fees charged by First Data to it.

13. As a result these charges, Multipoint could not determine the residual fees due Jayme, Hyer or its employees.

14. Ashley Isenberg ("Isenberg"), then an employee of Multipoint advised Jayme that Multipoint could not pay the fees pursuant to the Agreement until the First Data minimum fee issue was resolved.

15. In response to this, Jayme, who still had access to the First Data platform, locked Multipoint out of the First Data platform.

16. Multipoint used the First Data platform in order to determine the amount of residuals it was being paid on Hyer accounts on a daily and monthly basis.

17. Multipoint could not determine the residual fees it was being paid on the Hyer accounts without to the First Data Platform.

18. On December 18, 2017, Jayme, as a result of the dispute regarding minimum payments and the corresponding residual payments to her, sent correspondence to Super G advising it to re-direct the residual payments that Multipoint had purchased back to Hyer.

19. Super G is a lender to credit card processors and uses the residual fees earned by the processors from each credit card transaction as collateral on its loans. As part of Super G's terms it requires the residuals first to be paid to it to satisfy the party's loan obligation, then Super G makes the excess payments to the borrower.

20. Upon information and belief, on or about December 18, 2018, Jayme also sent a correspondence to First Data requesting that it cease paying the residual payments earned on Multipoint accounts to Multipoint, or its lender Super G.

21. On January 10, 2018, Multipoint wrote to Hyer Standards demanding that it provide Multipoint access to the First Data platform and cease requesting First Data and Super G to re-direct payments to Hyer.

22. On January 16, 2018, Jayme sent an email to Multipoint informing it that she had contacted each of the 223 merchant accounts she sold to Multipoint and advised each that Hyer, not Multipoint would be servicing their accounts moving forward.

23. In January of 2018, Hyer began receiving the residual payments from the merchant accounts it had sold to Multipoint.

24. In January of 2018, Multipoint stopped receiving its residual payments from the merchant accounts it had had purchased from Hyer.

25. As a result of Jayme's actions on behalf of Hyer, Hyer has breached its Agreement with Multipoint by breaching Section 4.8, Section 6.1, Section 6.2 and Section 8 of the Agreement.

26. As a result of Hyer's breach, Multipoint has been damaged in that it has paid Hyer for merchant accounts it did not receive.

27. As a result of Hyer's breach of Section 8 (non-solicitation), MultiPoint's damages are $1,115,000, or $5,000 for each of the 223 merchant accounts Jayme contacted to transfer back to Hyer.

28. Multipoint performed its obligations under the Agreement by making its monthly payments to Hyer, paying the monthly based residual fees to Hyer's employees, paying off Hyer's loan with Super G and satisfying Hyer's registration fees owed to the credit card companies.

WHEREFORE, Defendant/Counter-Plaintiff, Multipoint, Inc. requests judgment in its favor and against the Plaintiff/Counter-Defendant, Hyer Standards, LLC, in an amount to be proven at trial, plus its attorney's fees and costs and for any further relief the Court deems reasonable and just.

Dated: September 16, 2019                                  Respectfully submitted,
                                                                                   Multipoint, Inc., Super G Capital, LLC and
                                                                                   Ashley Isenberg

                                                                                   By:   /s/ Jordan Finfer        ,



One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
Elizabeth Archerd (earcherd@pfs-law.com)
Patzik, Frank & Samotny Ltd.

13

200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300
Firm I.D. No.: 35160

14

**CERTIFICATE OF SERVICE**

  I, the undersigned, an attorney, hereby certify that on September 16, 2019, I caused to be served the attached **Defendants' Answer, Affirmative Defenses and Counterclaim**, upon the parties of record listed below, through the Court's electronic filing service.

    Sean A Bukowski
    Nash Spindler Grimstad & McCracken LLP
    Email: sbukowski@nashlaw.com

    Ryan R Graff
    Nash Spindler Grimstad & McCracken LLP
    Email: rgraff@nashlaw.com

    David D. Pope
    Benesch, Friedlander, Coplan & Aronoff LLP
    Email: dpope@beneschlaw.com

    Trevor J Illes
    Benesch Friedlander Coplan & Aronoff, LLP
    Email: TIlles@beneschlaw.com

            /s/ Jordan A. Finfer