UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HYER STANDARDS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 6669 |
| | ) | |
| SUPER G CAPITAL, LLC, MULTIPOINT, | ) | |
| INC., ASHLEY ISENBERG, and | ) | |
| WORLDPAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMRANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Super G Capital, LLC ("Super G"), Multipoint, Inc. ("Multipoint"), and Ashley Isenberg's (collectively, "Defendants") motion to dismiss Plaintiff Hyer Standards, LLC's ("Hyer") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted-in-part and denied-in-part.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Hyer's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Hyer is a Wisconsin limited liability company with a principal place of business in Pelican Lake, Wisconsin. Hyer is in the business of payment processing services. Defendant Super G is a Delaware limited liability company with a principal place of business in Arlington, Virginia. Super G provides financing to businesses. Multipoint is an Illinois corporation with a principal place of business in Chicago, Illinois. Defendant Multipoint provides merchant services. Isenberg is Multipoint's owner, president, and Chief Operating Officer. Defendant WorldPay has a principal place of business in Atlanta, Georgia. WorldPay provides secure payment services for businesses, which includes online payments, telephonic payments, and card machines.

Around June 2017, Hyer approached Multipoint and Isenberg a business deal between the two companies. Hyer needed Multipoint to process credit card chips, which Hyer could not do itself. On July 5, 2017, Hyer and Multipoint entered into a portfolio purchase agreement in which Hyer sold its portfolio residuals to Multipoint, subject to certain conditions.

As relevant here, the portfolio purchase agreement required that Multipoint make payments to Hyer for $110,000 in equal installments over 12 months, with the first payment due on August 20, 2017. The agreement also required that 50% of the portfolio's residuals be paid to Hyer's sale representatives, Duane Vandre and Donald Lewis. In addition, Multipoint had to pay Hyer 10% of the residuals earned from the portfolio and 50% of the residuals earned from future accounts that Hyer signed up for payment processing. Hyer alleges that Multipoint failed to make the installment

2

payments starting in January 2018. Hyer also alleges that it has not been paid the residuals specified under the agreement.

After entering into the purchase agreement with Hyer, Multipoint secured a loan with Super G using the portfolio residuals that Hyer was supposed to receive under the agreement. Hyer notified Super G of this alleged breach of contract and demanded that Super G redirect the residual income to Hyer. Super G refused.

Hyer asserts that Multipoint provided it with false information during their business negotiations. According to Hyer, Multipoint claimed that it is an independent sales organization ("ISO") processor, that it is a financially stable company, and that it would make payments to Hyer as required by their agreement. Hyer alleges that these are all false statements.

Hyer further claims that Multipoint again violated the purchase agreement after Hyer filed this suit. Specifically, the portfolio purchase agreement contained a section providing that any assignment of interests under the agreement were void unless agreed upon by the parties. But after Hyer filed suit, Multipoint sold to WorldPay portfolio accounts that it had previously purchased from Hyer without Hyer's consent. Hyer informed WorldPay of the contractual restrictions on December 7, 2018. WorldPay did not respond prior to the filing of the Amended Complaint.

To recover its losses, Hyer filed this lawsuit in the U.S. District Court for the Eastern District of Wisconsin on May 4, 2018. The case was transferred to this Court on October 2, 2018.

On December 17, 2018, Hyer filed its fourteen count Amended Complaint, alleging claims for: breach of contract against Multipoint (Count I); injury to business under Wisconsin law against Multipoint and Super G (Count II); civil conspiracy against Multipoint and Super G (Count III); punitive damages against Multipoint and Super G (Count IV); misrepresentation against Multipoint (Count V); negligent misrepresentation against Multipoint (Count VI); intentional misrepresentation against Multipoint (Count VII); strict liability misrepresentation against Multipoint (Count VIII); rescission of contract against Multipoint (Count IX); civil theft against Super G (Count X); fraud against Multipoint and Super G (Count XI); piercing the corporate veil against Isenberg (Count XII); replevin against WorldPay (Count XIII); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., against Multipoint (Count XIV).

On December 17, 2018, Defendants moved to partially dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), urging the Court to dismiss all claims except for the breach-of-contract claim against Multipoint (Count I) and the replevin claim against WorldPay (Count XIII).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to

4

relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The requirement that fraud be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id.* at 442. The heightened pleading standard applies to all *allegations* of fraud (such as a misrepresentation), not merely *claims* labeled fraud. *Id.* at 447.

**DISCUSSION**

Defendants urge the court to dismiss Counts II through XII and Count XIV, arguing that Hyer has failed to state a claim for each respective Count. Hyer agrees that Count II (injury to business under Wisconsin law), Count IV (punitive damages), Count V (misrepresentation), and Count IX (rescission of contract) must be dismissed. Accordingly, the Court grants the motion with respect to those counts and will address the remaining claims in turn.

**I. Civil Conspiracy (Count III)**

Defendants argue that Hyer failed to plead sufficient facts showing a conspiracy between Multipoint and Super G, and that Multipoint cannot be liable for innocently assisting the tortious conduct of another. We agree that Hyer has not plead sufficient facts to establish a conspiracy.

Under Illinois law,[1] a civil conspiracy requires: (1) an agreement between two or more persons to accomplish "either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017).

The existence of an agreement is a necessary and important element that must be alleged in the complaint, "[i]n order to connect a defendant to an alleged civil

---

[1] The parties agree that Illinois law applies to all claims under the contract's choice-of-law provision.

conspiracy." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924 (1st Dist. 2007). Co-conspirators must have knowingly and voluntarily participated in a common scheme. *Id.*; *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012). Moreover, "[t]he mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Lerman v. Turner*, 2010 WL 4627656, at *3 (N.D. Ill. 2010) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23 (1998).

Here, Hyer has alleged little more than the legal conclusion that Multipoint and Super G conspired against it. Hyer does not allege enough facts to support an inference that Multipoint and Super G intentionally entered into an agreement to harm Hyer. Instead, Hyer characterizes a combination of acts as a conspiracy and does not allege a specific agreement or scheme that these acts advanced. Accordingly, the motion to dismiss Count III is granted.

## II. Negligent Misrepresentation (Count VI)

Defendants argue that Count VI should be dismissed under the *Moorman Mfg. Co v. National Tank Co.*, 91 Ill. 2d 69 (1982), doctrine barring recovery for solely economic losses (the "*Moorman* doctrine"). Hyer argues without support that the claim is not barred by the *Moorman* doctrine because the claim arises from a misrepresentation in negotiations and not a breach of a contractual obligation. We agree that the claim is barred by the *Moorman* doctrine.

7

The *Moorman* doctrine provides that plaintiffs cannot rely on tort law to recover for solely economic losses. *Moorman*, 91 Ill. 2d at 91-92; *Geimer v. Bank of Am., N.A.*, 784 F. Supp. 2d 926, 933 (N.D. Ill. 2011). That is because tort law affords the proper remedy for losses arising from personal injuries or damage to one's property, whereas contract law provides the proper remedy for economic losses stemming from diminished commercial expectations without related injuries to persons or property. *Geimer*, 784 F. Supp. at 933. Thus, where tortious conduct leads to a contractual breach that results in purely economic losses, the only avenue for recovering those losses is a breach-of-contract claim.

Here, Hyer only alleges that it suffered "pecuniary damages" as a result of the negligent misrepresentation and does not allege any personal injury or property damage. Thus, the *Moorman* doctrine bars Hyer from recovering those damages using a tort claim. Hyer has not cited, and we have not found, any cases recognizing an exception to the *Moorman* doctrine for negligent misrepresentations in contract negotiations. Nor does Hyer argue that any of the recognized exceptions to the *Moorman* doctrine apply. Accordingly, the motion to dismiss Count VI is granted.

### III. Fraud Claim

Defendants next advance four reasons for the Court to dismiss Hyer's fraud claims—intentional misrepresentation (Count VII) and fraud (Count XI). First, Defendants argue that Hyer does not plead facts greater than a contractual obligation. Second, Defendants contend that Hyer has failed to meet the heightened pleading

8

standard for fraud under Federal Rule of Civil Procedure 9(b). Third, Defendants claim that they did not misrepresent their ability to meet their payment obligations. Fourth, Defendants contend that statements relating to a future promise cannot form the basis of a fraud claim unless Hyer alleges an exception to promissory fraud, which it has not. We agree that Hyer has failed to meet the heightened pleading standard for fraud.

Fraud claims are subject to heightened pleading requirements under Rule 9(b), requiring that the circumstances constituting fraud or mistake be stated with particularity and that malice, intent, knowledge, and other condition of mind of a person may be alleged generally. Fed. R. Civ. P. 9(b). Fraud allegations "must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Ward Enterprises, Inc. v. Bang & Olufsen*, 2003 WL 22859793, at *1 (N.D. Ill. 2003).

The Seventh Circuit has interpreted Rule 9(b) to require the plaintiff to plead the circumstances—"the who, what, when, where, and how"—in detail. *Equity Builders & Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 888 (N.D. Ill. 2005). A generalized, detached pleading of these points will not do. To meet this requirement, a plaintiff must state in its complaint "the identity of the person making the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated." *Powers v. Corn Prod. Int'l, Inc.*, 557 F. Supp. 2d 921, 927 (N.D. Ill. 2008).

9

Additionally, "to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If [it] cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief." *Id.*. "In Illinois, a claim for intentional misrepresentation appears to be indistinguishable from a claim for fraudulent misrepresentation, with 'intentional' and 'fraudulent' being used interchangeably." *Id*.

Hyer has failed to plead sufficient facts to support claims for fraud and fraudulent misrepresentation. Hyer bases these claims on two fraudulent statements by Multipoint: (1) that Multipoint "was a financially stable company" and (2) "that it would make payments as required in the Agreement." Hyer alleges Multipoint made these assertions while "knowing it was not a financially stable company and would not make payments as required in the Agreement" or "without caring whether the representations were true or false." While Hyer alleges that all communications by Multipoint were made through Isenberg, Hyer does not plead the remaining necessary contextual facts—the time, place, and context of the statement, and the method by which the statement was communicated. Therefore, these claims do not meet the heightened pleading standards under Rule 9(b). Accordingly, the motion to dismiss Counts VII and XI is granted.

**IV. Strict Liability Misrepresentation (Count VIII)**

Defendants argue that Count VIII should be dismissed because strict liability misrepresentation is not a recognized cause of action under Illinois law. Hyer does not respond to this argument and, thus, has waived any argument. Nevertheless,

Defendants are correct that strict liability misrepresentation is not a cause of action in Illinois. *See Kirkland & Ellis v. CMI Corp.*, 1996 WL 559951, at *12 (N.D. Ill. 1996); *McAfee v. Rockford Coca-Cola Bottling Co.*, 40 Ill. App. 3d 521, 527 (2d Dist. 1976). Accordingly, the motion to dismiss Count VIII is granted.

**V. Civil Theft (Count X)**

Defendants argue that Hyer has failed to state a claim for civil theft, i.e. conversion, because Hyer has failed to allege that Super G's possession of the residual income was unauthorized or that Hyer has an immediate or absolute right to the residual income. Defendants also argue that "it is not clear what specific residual income [Hyer] is referring to" and that Hyer sold its right to the residual income. We disagree.

To state a claim for civil theft, Hyer must allege (1) a right to the property at issue; (2) a right to the immediate possession of property; (3) a demand for possession; and (4) that Super G wrongfully and without authorization assumed control, dominion, or ownership over the property. *Thakkar v. Ocwen Loan Servicing, LLC*, 2019 WL 2161544, *12 (N.D. Ill. 2019) (quoting *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998)). Additionally, "under Illinois law, the subject of a conversion claim must be an identifiable object of property." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (citing *In re Thebus*, 108 Ill.2d 255, 91 Ill.Dec. 623, 483 N.E.2d 1258, 1260 (1985)).

Typically, an asserted right to money does not satisfy the "identifiable object" requirement. *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). Conversion

11

will only lie if the money at issue can be described as a "specific chattel," meaning "a specific fund or specific money in coin or bills." *Id.* The plaintiff must show "that the money claim belonged to [him] at all times and that defendant converted the money to its own use." *Song*, 640 F. Supp. 2d at 1017.

Hyer has successfully plead each element of conversion. The Amended Complaint and attached contract provide that a portion of the residual income from the portfolio belonged to Hyer. Super G, however, came into possession of Hyer's money. Hyer alerted Super G that the money belonged to Hyer and demanded that Super G give it the money; Super G denied these demands.

Although a specific dollar amount has not been plead, the funds are sufficiently determinable because the money may be identified by its source or description—ten percent of the residuals from the portfolio and 50 percent of residuals from new accounts. *See Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1063, (1st Dist. 1996); *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 927–28 (N.D. Ill. 2018). Alleging only a percentage of a certain amount does not make the money indeterminable. *See Roderick*, 282 Ill. App. 3d at 1062 ("The amount the Bank allegedly converted in this case was not indeterminate but was specific and identifiable. The amount of money the plaintiff alleges the Bank owes is not estimated. Rather it is exactly five percent of the final payment under the purchase agreement."). Accordingly, the Court denies the motion to dismiss Count X.

## VII. Piercing the Corporate Veil (Count XII)

Defendants argue that Hyer's piercing the corporate veil cause of action fails because it is "meritless." Hyer argues that the claim is proper because Isenberg was the only person it interacted with when dealing with Multipoint and thus gave the impression to Hyer that the corporation was a façade for Isenberg. We agree with Defendants, as piercing the corporate veil is not an independent cause of action. *See, e.g.*, *United States v. All Meat & Poultry Prod. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007) ("under Illinois law, piercing the corporate veil is an equitable remedy, not a cause of action"); *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) ("[p]iercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim"); *A.L. Dougherty Real Estate Mgmt. Co., LLC v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 24 ("Piercing the corporate veil is not a separate cause of action but instead is a means for imposing liability in an underlying cause of action."). Accordingly, the motion to dismiss Count XII is granted.

## VIII. ICFA Violation (Count XIV)

Defendants argue that Hyer cannot recover from Multipoint under the ICFA because Hyer is not a consumer in the context of the portfolio purchase agreement and does not meet the requirements of the consumer nexus test. Hyer responds by arguing that the term consumer encompasses companies in addition to persons. We agree with Defendants.

13

To state an ICFA claim, a plaintiff must allege (1) a deceptive or unfair act or practice by the defendant, (2) defendant intended that plaintiff rely on the deceptive or unfair practice, (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce, and (4) defendant's unfair or deceptive practice caused plaintiff actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Recovery is allowed for either deceptive or unfair conduct. *Robinson v. Toyota Motor Credit Corp.*, 266 Ill.Dec. 879 (2002); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive.").

Generally, a plaintiff must allege that it is a "consumer" in order to state an ICFA claim. *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017). The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Id*; 815 Ill. Comp. Stat. 505/1(e). The term person includes "companies." 815 Ill. Comp. Stat. Ann. 505/1(c).

Courts have also allowed non-consumers—both businesses and nonbusinesses—to go forward with ICFA claims where they satisfy the "consumer nexus" test. *Liston*, 254 F. Supp. 3d at 1005; *see Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 911–12 (N.D. Ill. 2012). To satisfy the consumer nexus test, a plaintiff must show "(1) that their actions were akin to a consumer's actions to establish a link between

them and consumers; (2) how defendant's representations . . . concerned consumers other than [the plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Liston*, 254 F. Supp. 3d at 1006 (N.D. Ill. 2017).

While Hyer is correct that a business can prevail under the ICFA, the alleged deceptive practice did not occur in the context of a purchase from Multipoint. Rather, Hyer alleges the deceptive practice occurred when Hyer sold its portfolio to Multipoint. Moreover, Hyer has failed to allege any of the elements of the consumer nexus test. Accordingly, the motion to dismiss Count XIV is granted.

## **CONCLUSION**

For the reasons mentioned above, the Court partially grants the Defendants' motion to dismiss. Counts II, III, IV, V, VI, VII, VIII, IX, XI, XII, XIV are dismissed. The motion is denied with respect to Count X. It is so ordered.

Dated: 06/01/2020

_____

Charles P. Kocoras
United States District Judge